IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

AUTOMED TECHNOLOGIES, INC.,           )
                                       )
                Plaintiff,             )
                                       )
        v.                             )   No. 04 C 5596
                                       )
MICROFIL, LLC and WILLIAM              )
GEROLD, an individual,                 )
                                       )
                Defendants.            )

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on the parties' motions for summary judgment. For the reasons stated below, we deny Plaintiff AutoMed Technologies, Inc.'s ("AutoMed") motion for summary judgment on the patent infringement claim without prejudice, grant AutoMed's motion for summary judgment on the breach of contract claim, grant AutoMed's motion for summary judgment on the issues of invalidity and inequitable conduct, and grant AutoMed's motion to bar the opinion testimony of Michael Bergeron. Furthermore, we deny Defendants Microfil, LLC's and William Gerold's (collectively referred to as "Microfil") partial motion for summary judgment on infringement without prejudice and deny Microfil's motion for summary judgment on the breach of contract claim.

1

## BACKGROUND

AutoMed is the assignee of U.S. Patent No. 6,449,927 ("'927 Patent") and U.S. Patent No. 6,742,671 ("'671 Patent"). Both the '927 Patent and the '671 Patent cover a system and methods for automatically dispensing prescriptions. The inventions claimed and described in the AutoMed patents are embodied in AutoMed's QuickScript System. On April 20, 1998, William Gerold ("Gerold") entered into a written and oral agreement including a Nonemployee Security Agreement ("Agreement") with Baxter Healthcare Corporation ("Baxter") to become the project manager of Baxter's QuickScript project. On March 31, 1999, when AutoMed purchased the division of Baxter with which Gerold was associated, AutoMed became the assignee of the Agreement and the QuickScript project.

In 2002, after Gerold ended his consulting work for Baxter and AutoMed, Gerold founded Vanguard Medical Systems, which is now Microfil, and began the development of an automated pill dispensing system of his own. Gerold and several of his employees at Microfil eventually developed the Microfil 219 and Microfil 107 systems and filed a patent application, identified by Serial Number 110/160,970. When AutoMed discovered Microfil's 219 and 107 systems, AutoMed brought the instant action. Within days of receiving AutoMed's complaint, Gerold allegedly attempted to design around AutoMed's patents by developing yet another pill dispensing system, the Auger System.

AutoMed brought the instant patent infringement suit against Microfil alleging that Microfil's 219, 107 and Auger Systems (collectively referred to as "the

Microfil Systems") infringe AutoMed's '927 Patent and '671 Patent. AutoMed further alleges that Gerold breached the Agreement by using confidential information gained during his employment for Baxter and AutoMed in the design of the Microfil Systems.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In seeking a grant of summary judgment, the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed.R.Civ.P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." *Id.* at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a

genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must consider the evidence as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences that favor the non-moving party. *Anderson*, 477 U.S. at 255.

In the context of patent infringement, summary judgment is appropriate only if "no reasonable jury could find that every limitation recited in the properly construed claim either is or is not found in the accused device either literally or under the doctrine of equivalents." *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1339 (Fed. Cir. 2001); *see also Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Int'l, Inc.*, 389 F.3d 1370, 1376 (Fed. Cir. 2004)(stating that "a trial court may determine infringement on summary judgment only 'when no reasonable jury could find that every limitation recited in the properly construed claim either is or is not found in the accused device'"). The burden of establishing infringement is upon the patentee suing for infringement and thus "an accused infringer seeking summary judgment of non-infringement may meet its initial responsibility either by providing evidence that would preclude a finding of infringement, or by showing that the evidence on file fails to establish a material issue of fact essential to the patentee's case." *Novartis Corp. v. Ben Venue Laboratories, Inc.*, 271 F.3d 1043, 1046 (Fed. Cir. 2001)(stating that "summary judgment of non-infringement [may] only be granted if, after viewing the alleged facts in the light most favorable to the non-movant [and drawing all justifiable inferences in the non-movant's favor,] there is no genuine issue whether

4

the accused device is encompassed by the [patent] claims"); *Vivid Techs., Inc. v. American Science & Eng'g, Inc.*, 200 F.3d 795, 807 (Fed. Cir. 1999); *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1304 (Fed. Cir. 1999).

## DISCUSSION

### I. AutoMed's Motions for Summary Judgment

AutoMed moves for summary judgment on the issue of patent infringement, on the breach of contract claim, and on the issues of invalidity and inequitable conduct. Additionally, AutoMed moves to bar the opinion testimony of Michael Bergeron.

#### A. Patent Infringement Claims

AutoMed seeks summary judgment for the alleged infringement of its '927 Patent and '671 Patent based upon the parties' own proposed claim construction. Both Plaintiff and Defendants in their briefs proceed to construe the terms in dispute and apply an infringement analysis based on their own interpretations. (Def. Resp. to S.J. on Infr. 6). The parties' infringement analysis at this juncture is not proper. Patent infringement analysis is a two-step process. First, the court determines the scope of the claims as a matter of law, and then a finder of fact makes a factual comparison between the properly construed claims and the accused device to determine whether there was infringement. *Teleflex, Inc. v. Ficosa North America*

*Corp.*, 299 F.3d 1313, 1323 (Fed. Cir. 2002); *Cybor Corp. v. FAS Techs, Inc.*, 138 F.3d 1448, 1454 (Fed. Cir. 1998)(en banc); *Intellectual Prop. Dev., Inc. v. UA-Columbia Cablevision of Westchester, Inc.*, 336 F.3d 1308, 1313 (Fed. Cir. 2003); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1581-1582 (Fed. Cir. 1996). Thus, in order to give both parties a fair opportunity to conduct a proper patent infringement analysis, the terms in dispute must first be construed as a matter of law. We note that we have construed the claims below and the parties will be provided with an opportunity to file a new motion for summary judgment on the issue of infringement based upon the court's claim construction. Therefore, we deny AutoMed's motion for summary judgment on the issue of patent infringement without prejudice.

### B. Breach of Contract Claim

AutoMed also moves for summary judgment on the breach of contract claim. To establish a claim for breach of contract under Illinois law, a plaintiff must establish: "1) the existence of a valid and enforceable contract; 2) the performance of the contract by plaintiff; 3) the breach of the contract by defendant; and 4) a resulting injury to the plaintiff." *Priebe v. Autobarn, Ltd.*, 240 F.3d 584, 587 (7th Cir. 2001)(citing *Hickox v. Bell*, 195 Ill. App. 3d 976, 992 (Ill. App. Ct. 1990)). In the instant action, both AutoMed and Microfil agree that a valid and enforceable contract existed, and that AutoMed performed on the contract. (P R Micro SJ 2 6; Micro SJ 3). The parties disagree, however, on whether Microfil breached the contract and on

6

whether a resulting injury to AutoMed occurred. (P R Micro SJ 2 7-28; Micro SJ 2 8-12).

1. Breach

AutoMed alleges that Gerold misappropriated confidential information during the design of the Microfil systems and thus breached the contract. When determining whether confidential information has been misappropriated in the design of a system, one way that an accused may be liable is if the information was used "to demonstrate what pitfalls to avoid" during the design process. *Nilssen v. Motorola, Inc.*, 963 F.Supp. 664, 683 (N.D.Ill. 1997). Furthermore, misappropriation may be proven "by demonstrating that defendant's new employment will inevitably lead him to rely on the plaintiff's trade secrets." *See PepsiCo, Inc. v. Redmond*, 54 F.3d 1262, 1272 (7th Cir. 1995)(holding that plaintiff's confidential information would inevitably be misappropriated, and that defendant could not be trusted to avoid that conflict of interest).

In the instant action, it is undisputed that Gerold entered into an agreement with AutoMed to become the project manager of the QuickScript Project. ( R A SF 26). It is also undisputed that the Agreement stated that "during the course of [his] employment with Baxter, [Gerold might] acquire or have access to information that is confidential and of great value to Baxter" and that he could "use Baxter's confidential information only for the direct and sole benefit of Baxter . . . ." (Agreement Par. 1(a-b))(R A SF 26). Furthermore, Gerold concedes that he agreed

7

to "not remove from Baxter's premises any documents" and that in cases where he had permission to remove documents, he would return such documents "upon termination of [his] employment." (Agreement Par. 2)(R A SF 27). Gerold admits that he began the development of the Microfil Systems after ending his consulting work for AutoMed. (R A SF 34, 35). Gerold also admits to looking at a couple of engineering drawings he retained from AutoMed in the beginning stages of the design process. ( R A SF 36).

Microfil claims that Gerold never incorporated the drawings into the Microfil Systems, and that once he realized he was still in possession of AutoMed's documents, he returned them immediately. (Gerold Tr. 165: 10-18). However, Microfil has not pointed to any evidence other than Gerold's bare assertion that he did not consider the information in the drawings and files, which Gerold admittedly should not have utilized in the development of the Microfil systems. All of the evidence points to the only reasonable inference that Gerold took into consideration, at least in part, AutoMed's material that he viewed when he developed the Microfil Systems.

Microfil also argues that Gerold has been designing automated systems for many years, and claims that he and a number of his employees worked countless hours to design the Microfil Systems. (Gerold Decl. Par. 18). Such facts, however, are entirely irrelevant. Although the ultimate system could have been the product of many hours of work by Microfil employees, if any part of the development was tainted by an improper misappropriation, a breach has occurred. Such a breach

occurred no matter how small an amount of AutoMed's confidential information was unlawfully utilized. The work of the Microfil employees was thus based, at least in part, upon the unlawful misappropriation of AutoMed's intellectual property and Microfil is not excused from liability simply because its employees may have put in many hours of work on product development after the unlawful misappropriation.

Microfil also argues that Gerold had a right to retain AutoMed's documents. However, as is indicated above, Microfil admits that the express language of the Agreement Gerold signed states otherwise. Microfil has not pointed to any evidence that would indicate Gerold's obligations under the Agreement were not fully in effect after Gerold left AutoMed. Microfil disputes paragraph 32 of AutoMed's statement of facts, which contends that Gerold did not have permission to retain the AutoMed documents and materials after his termination. However, Microfil does not provide any citation to the record in support of its position. Microfil cites to the deposition transcript of Charles Eller in support of its denial, but such transcript was not provided to the court by Microfil as an exhibit. AutoMed provided part of the transcript to the court, but did not provide the pages cited by Microfil. In fact, the pages provided by AutoMed show that Microfil may have cited Eller's testimony out of context. In the portion of the transcript that was provided to the court by AutoMed, Eller states that Gerold was given permission to retain certain AutoMed materials, but Eller also explicitly states that AutoMed never gave Gerold "any written permission to retain documents pertaining to the QuickScript project." (Eller Dep. 39-40). Therefore, based on the above evidence, no reasonable trier of fact

could fail to find that Microfil breached the contract.

### 2. Resulting Injury

AutoMed argues that the alleged use of its confidential information resulted in an injury. Microfil counters this argument by stating that AutoMed did not suffer any lost sales and, thus, suffered no injury. Confidential information that is obtained by a business "is a species of property to which the corporation has the exclusive right and benefit, and which a court of equity will protect through the injunctive process or other appropriate remedy." *FMC Corp. v. Capital Cities/ABC, Inc.*, 915 F.2d 300, 305 (7th Cir. 1990)(quoting *Carpenter v. United States*, 484 U.S. 19, 26 (1987)). The loss of exclusive use of such confidential information has been recognized by the courts as an injury. *See FMC Corp. v. Boesky*, 852 F.2d 981, 991 (7th Cir.1988)(holding that loss of confidential information was an adequate injury to allow standing).

AutoMed has stated that its confidential information is essential to its business. Individuals and corporations keep confidential information from the public for a reason, in that its information has value to them and if it were to become public, such information would no longer have the same value. *Id.* Accordingly, the misappropriation of confidential information will cause injury to the party that holds substantial value in that information's confidentiality. As is indicated above, the undisputed evidence clearly shows that Gerold did in fact use AutoMed's confidential information and the evidence also shows that AutoMed suffered an

injury because its confidential information was no longer in its exclusive use. Therefore, because Gerold breached the contract and a resulting injury occurred, we grant AutoMed's motion for summary judgment on the breach of contract claim.

### B. Invalidity Claims

AutoMed also seeks summary judgment on the invalidity issue. Microfil alleges as an affirmative defense and as a counterclaim that the AutoMed patents are invalid and unenforceable. Microfil asserts that AutoMed's patents are invalid due to obviousness, and due to inequitable conduct by AutoMed before the Patent and Trademark Office ("PTO"). AutoMed also moves to bar the testimony of Michael Bergeron, who Microfil seeks to introduce to address the invalidity issue. Once a patent is issued, however, it is presumed valid by statute, and the party asserting invalidity bears "the burden of establishing invalidity of a patent or any claim thereof . . . ." *See* 35 U.S.C. § 282. This presumption can be overcome "only by facts supported by clear and convincing evidence to the contrary." *Enzo Biochem, Inc. v. Gen-Probe Inc.*, 323 F.3d 956, 962-63 (Fed. Cir. 2002). When confronted with invalidity claims, absent corroborating evidence, the Federal Circuit has "looked with disfavor upon invalidating patents on the basis of mere testimonial evidence." *Finnigan Corp. v. International Trade Com'n*, 180 F.3d 1354, 1366 (Fed. Cir. 1999)(reasoning that invalidating a patent on mere testimony is insufficient due to "the forgetfulness of witnesses, their liability to mistakes, their proneness to recollect things as the party calling them would have them recollect them, aside from the

temptation to actual perjury") (quoting *The Barbed-Wire Patent*, 143 U.S. 275, 284 (1892)). Specifically, witnesses who are influenced by interested parties "to elicit testimony favorable to themselves are not usually to be depended upon for accurate information, and therefore such testimony rarely satisfies the burden . . . of prov[ing] invalidity by clear and convincing evidence." *Id.*

### 1. Obviousness

AutoMed moves for summary judgment on the issue of invalidity, arguing that its patents are not obvious under 35 U.S.C. § 103 ("Section 103"). Section 103 provides the following:

> A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.

35 U.S.C. § 103. In the instant action, Microfil bases its entire obviousness defense on a system known as the "Breed System," which cannot be used to invalidate AutoMed's patents. While working for Breed Corporation, Gerold, one of Microfil's founders, allegedly worked on this device. (Gerold Decl. Par. 5). Based on Gerold's description, Microfil asserts that the "Breed System" includes many components of the claimed AutoMed System. (Def. Resp. to S.J. on Inval. 3). Microfil, however, has not produced any documents or physical evidence relating to

the "Breed System." The only other evidence provided to corroborate Gerold's statements is an expert report of Michael Bergeron ("Bergeron"), a software engineer and part owner of Microfil whose report was based entirely on Gerold's knowledge of the system. (R A SF 101-108). Accordingly, the only evidence of the "Breed System" is the testimony of Gerold, an individual with a substantial interest in the matter.

Therefore, we cannot find that a reasonable trier of fact could find that Microfil has met its burden relating to obviousness. The only evidence Microfil has offered to invalidate AutoMed's patents is the testimony of Gerold and the expert report by Bergeron. Furthermore, both Gerold and Bergeron have an interest in the matter, and the testimony of a witness cannot be relied upon to invalidate a patent based on obviousness. Therefore, we grant AutoMed's motion for summary judgment on the issue of invalidity due to obviousness.

### 2. Inequitable Conduct

AutoMed also moves for summary judgment on the issue of invalidity due to inequitable conduct. Inequitable conduct requires the court to inquire as to whether: 1) "the withheld references satisfy a threshold level of materiality," and 2) "whether the applicant's misconduct satisfies a threshold showing of intent to mislead." *Halliburton Co. v. Schlumberger Tech. Corp.*, 925 F.2d 1435, 1439 (Fed. Cir. 1991). Microfil argues that because AutoMed did not disclose the "Breed System" to the PTO, AutoMed's patents should be invalidated due to inequitable conduct. Gerold

states in his declaration that he informed AutoMed of the "Breed System" and that he told AutoMed's inventors how the "Breed System" worked. (Gerold Decl. Par. 8). Because of this knowledge, Microfil argues that AutoMed had a duty to disclose the "Breed System" to the PTO during the prosecution of its patents.

Microfil has not pointed to sufficient evidence for the court to find as a matter of law whether or not AutoMed committed inequitable conduct, because Microfil again relies on the "Breed System" to invalidate AutoMed's patents. The only description the court has of the "Breed System" is from the depositions of Gerold and Bergeron. As we stated above, a patent should not be invalidated based merely on testimony, especially testimony from a witness with an interest in the matter. Thus, no reasonable trier of fact could find that AutoMed had a duty to disclose the "Breed System" to the PTO. Therefore, we grant AutoMed's motion for summary judgment on the issue of invalidity due to inequitable conduct.

### 3. Motion to Bar Bergeron Opinion

AutoMed has also moved to bar the expert opinion testimony of Michael Bergeron, asserting that neither of Bergeron's opinions regarding the invalidity of AutoMed's patents meet the criteria set forth by Rule 702 of the Federal Rules of Evidence. (M. Bar 1). Rule 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles

14

and methods reliably to the facts of the case.

Fed. R. Evid. 702. In the instant action, the testimony of Bergeron has been offered primarily as a technical expert rather than as a patent expert. (Resp. to M. Bar 2). AutoMed asserts that Bergeron's testimony should be barred because he has not seen the alleged prior art that serves as the sole basis for his opinions, and because he allegedly has no understanding of the analysis to prove invalidity. (M. Bar 1). AutoMed also complains that Bergeron's opinions are based on information solely provided to him by Gerold. The above assertions by AutoMed are sufficient to warrant striking Bergeron's testimony. Therefore, based on all of the above, we grant AutoMed's motion for summary judgment on the invalidity claims.

## II. Microfil's Motions for Summary Judgment

Microfil moves for partial summary judgment on the infringement claim and for partial summary judgment on the breach of contract claim.

### A. Non-Infringement

Microfil asserts that it has successfully been able to design around AutoMed's patents with its Auger System. AutoMed, on the other hand, claims that the Auger System is capable of utilizing vibration to dispense the prescriptions. Again, both parties have prematurely presented their infringement analysis. In order for both parties to have a fair opportunity to conduct a proper patent infringement analysis, all disputed terms must be construed by the court as a matter of law. Both parties are in

dispute over the term "vibratory dispenser." (P. Resp. Micro. SJ 5). We have construed this term, as explained below, and both parties will be given an opportunity to file summary judgment motions for infringement or non-infringement based on our claim construction. Therefore, we deny Microfil's motion for summary judgment on the issue of non-infringement without prejudice.

### B. Breach of Contract Claim

For the reasons explained above in regard to AutoMed's summary judgment motion on the breach of contract issue, we deny Microfil's partial motion for summary judgment on the breach of contract claim.

## III. Claim Construction

The court's claim construction is as follows. The parties are in dispute over the meaning of "Container/Canister," "Controller," and "Vibratory Dispenser." While, generally, claims are accorded their ordinary and accustomed meaning to one of ordinary skill in the relevant art, we must also examine the intrinsic record, including the written specification, drawings, and prosecution history to determine whether the patentee has defined a term contrary to its ordinary meaning or otherwise limited the scope of the claims. *CCS Fitness v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002). Further, while less significant than intrinsic evidence, the Federal Circuit has stated that district courts may look at extrinsic evidence when determining the legally operative meaning of claim language. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1318 (Fed. Cir. 2005)(stating that district courts may also rely

on extrinsic evidence, that "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises").

A. Container/Canister

The meaning of the term "container" or "canister" is disputed by the parties. Microfil asserts that the term "container" should be limited to a "unitary structure" as embodied in Figure 3 of the AutoMed patents. (Def. Resp. SJ for Infr. 7). Microfil's proposed claim construction for the term "container," however, is entirely wrong. Looking at the intrinsic evidence, the patentee clearly did not limit the container to one specific design. In fact, the written specification explicitly states that the "canister *may be of any suitable design* that allows dispensing of countable oral solid drugs." ('927 Patent Col. 6 L. 15-24). The specification further states that "canister 130 is *preferably* an assembly of components . . . ." (*Id.*). Accordingly, because the patentee used language that did not limit the term "container" to a specific "unitary structure," a container as defined in the AutoMed patents shall include any suitable design that allows dispensing of countable oral solid drugs.

B. Controller

The term "controller" is disputed by the parties. Microfil asserts that the term "controller" should be limited to a single device that controls the entire automated pill dispensing system. (Def. Resp. SJ for Infr. 6). AutoMed, on the other hand, asserts that the modifier "single" does not appear in the claims, the specifications, or

17

the prosecution histories and that the term should be construed to mean a device or system that regulates a process or another device. AutoMed's construction, however, is inconsistent with the written specification. In the written specification, the patentee clearly states that a control system regulates all aspects of the automated pill dispensing device. For example, the written specification states that "the control system places a refill request with the vibratory dispenser," that the "control system assigns at least one accumulation receptacle," and that the control system controls the various processes employed by the system. ('927 Patent Col. 9 L 48-51, Col. 10 L. 12-14, Col. 11 L. 43-46; '671 Patent Col. 9 L. 61-63, Col. 10 L. 14-16, and Col. 11 L. 44-47). Accordingly, while the patentee did not modify the term controller with the word single, the specification indicates that a single control system regulates the entire process.

### C. Vibratory Dispenser

The term "vibratory dispenser" is disputed by the parties. AutoMed asserts that the term "vibratory dispenser" should be construed to mean "a dispenser that uses vibration to aid in the dispensing function." (P. SJ for Infr. 6). This construction cannot be correct because, according to AutoMed's patents, vibration is required to move the medication from the canister into a vial. Both of AutoMed's patents contain claims that indicate that vibration causes the dispensing of the medication.

Claim 1 of the '927 Patent contains the following element:

at least one *vibratory dispenser* operatively controlled by the controller and including a coupling for attachment of an oral solid medication container in a detachable relationship, *the dispenser providing vibration to a coupled container* in response to the prescription information *so that medication is dispensed* from the container into a vial. ('927 Patent Col. 16 L. 48).

Claims 1 and 20 of the '671 Patent contain the following element:

a controller operatively controlling the vibratory dispenser, said controller causing *the vibratory dispenser to vibrate the coupled canister such that the medication contained in the coupled canister is dispensed in a predetermined manner.*

('671 Patent Col. 16 L. 50). Furthermore, the specification explicitly states that "the canister is vibrated by the drive unit *in order to move* countable solid drugs from the canister into a vial." ('671 Patent Col. 8 L. 1-3). The claims and specifications themselves indicate that vibration causes the pills to be dispensed. Therefore, the proper construction is that a "vibratory dispenser" is a device that uses vibration in order to dispense medication, and not a device that merely assists in the dispensing. Even AutoMed's own expert agrees with this construction, and defines a "vibratory dispenser" as "a device that dispenses a product using vibration." (Spong Tr. 40:23-42:6).

## CONCLUSION

Based on the foregoing analysis, we deny AutoMed's motion for summary judgment on the patent infringement claim without prejudice. We grant AutoMed's motion for summary judgment on the issues of invalidity and inequitable conduct, and grant AutoMed's motion to bar the opinion testimony of Bergeron. We also

19

grant AutoMed's motion for summary judgment on the breach of contract claim. We deny Microfil's partial motion for summary judgment on the patent infringement claim without prejudice and deny Microfil's motion for summary judgment on the breach of contract claim. The parties are given until November 21, 2005, to file summary judgment motions relating to infringement or non-infringement. If necessary, answers to the motions will be due on December 1, 2005, and replies will be due on December 15, 2005. The next status hearing is set for January 18, 2006, at 9:00 a.m.

Samuel Der-Yeghiayan
United States District Court Judge

Dated: October 26, 2005