# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| AUTOMED TECHNOLOGIES, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 04 C 5596 |
| MICROFIL, LLC and WILLIAM GEROLD, an individual, | ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Plaintiff AutoMed Technologies, Inc.'s ("AutoMed") motion for summary judgment. It is also before the court on Defendant Microfil, LLC's and Defendant William Gerold's (collectively referred to as "Microfil") motion for summary judgment. For the reasons stated below, we grant Microfil's motion for summary judgment and deny AutoMed's motion for summary judgment.

1

## BACKGROUND

AutoMed is the assignee of U.S. Patent No. 6,449,927 ("'927 Patent") and U.S. Patent No. 6,742,671 ("'671 Patent"). Both the '927 Patent and the '671 Patent cover a system and methods for automatically dispensing prescriptions. The inventions claimed and described in the AutoMed patents are embodied in AutoMed's QuickScript System. On April 20, 1998, William Gerold ("Gerold") entered into a written and oral agreement with Baxter Healthcare Corporation ("Baxter") to become the project manager of Baxter's QuickScript project that included a Nonemployee Security Agreement ("Agreement"). On March 31, 1999, when AutoMed purchased the division of Baxter with which Gerold was associated, AutoMed became the assignee of the Agreement and the QuickScript project.

In 2002, after Gerold ended his consulting work for Baxter and AutoMed, Gerold founded Vanguard Medical Systems, which is now Microfil, and began the development of an automated pill dispensing system of his own. Gerold and several of his employees at Microfil eventually developed the Microfil 219 and Microfil 107 systems and filed a patent application, identified by Serial Number 110/160,970. When AutoMed discovered Microfil's 219 and 107 systems, AutoMed brought the instant action. Within days of receiving AutoMed's complaint, Gerold allegedly attempted to design around AutoMed's patents by developing yet another pill dispensing system, the Auger System.

AutoMed brought the instant patent infringement suit against Microfil,

alleging that Microfil's 219, 107, and Auger Systems (collectively referred to as "the Microfil Systems") infringe AutoMed's '927 Patent and '671 Patent. AutoMed further alleged that Gerold breached the Agreement by using confidential information gained during his employment for Baxter and AutoMed in the design of the Microfil Systems. On October 26, 2005, we ruled on the parties' cross motions for summary judgment, granting AutoMed's motion for summary judgment on the breach of contract claim, granting AutoMed's motion for summary judgment on the issues of invalidity and inequitable conduct, and granting AutoMed's motion to bar the opinion testimony of Michael Bergeron. *AutoMed Technologies, Inc. v. Microfil, LLC*, 2005 WL 2861043, at *1 (N.D. Ill. 2005). We also construed the terms "Container/Canister," "Controller," and "Vibratory Dispenser," and denied the parties' motions for summary judgment on the issue of infringement without prejudice, giving the parties until November 21, 2005, to file motions for summary judgment on the issue of infringement in light of the court's claim construction. *Id.* We must now consider the parties' cross motions for summary judgment for infringement.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.

3

Civ. P. 56(c). In seeking a grant of summary judgment, the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." *Id.* at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The court must consider the evidence as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences that favor the non-moving party. *Anderson,* 477 U.S. at 255.

In the context of patent infringement, summary judgment is appropriate only if "no reasonable jury could find that every limitation recited in the properly construed claim either is or is not found in the accused device either literally or

4

under the doctrine of equivalents." *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1339 (Fed. Cir. 2001); *see also Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Int'l, Inc.*, 389 F.3d 1370, 1376 (Fed. Cir. 2004)(stating that "a trial court may determine infringement on summary judgment only 'when no reasonable jury could find that every limitation recited in the properly construed claim either is or is not found in the accused device' "). The burden of establishing infringement is upon the patentee suing for infringement and thus "an accused infringer seeking summary judgment of non-infringement may meet its initial responsibility either by providing evidence that would preclude a finding of infringement, or by showing that the evidence on file fails to establish a material issue of fact essential to the patentee's case." *Novartis Corp. v. Ben Venue Laboratories, Inc.*, 271 F.3d 1043, 1046 (Fed. Cir. 2001)(stating that "summary judgment of non-infringement [may] only be granted if, after viewing the alleged facts in the light most favorable to the non-movant [and drawing all justifiable inferences in the non-movant's favor,] there is no genuine issue whether the accused device is encompassed by the [patent] claims"); *Vivid Techs., Inc. v. American Science & Eng'g, Inc.*, 200 F.3d 795, 807 (Fed. Cir. 1999); *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1304 (Fed. Cir. 1999).

## DISCUSSION

Both Automed and Microfil have moved for summary judgment on the issue of whether the Microfil Systems infringe the '927 Patent or the '671 Patent.

According to the Federal Circuit, a court must determine infringement "by comparing the accused device to the claims[;] the accused device infringes if it incorporates every limitation of a claim, either literally or under the doctrine of equivalents." *MicroStrategy Inc. v. Business Objects, S.A.*, 429 F.3d 1344, 1352 (Fed. Cir. 2005)(citing *Nazomi Commc'ns, Inc. v. Arm Holdings, PLC*, 403 F.3d 1364, 1732 (Fed. Cir. 2005)). In order to find literal infringement, the accused products must include every claim limitation that is included in the asserted claims. *Id.*; *see also Zelinski v. Brunswick Corp.*, 185 F.3d 1311, 1316 (Fed. Cir. 1999)(stating that "an infringement analysis requires that the patentee prove that the accused device embodies every limitation in the claim, either literally, or by a substantial equivalent"). Under the doctrine of equivalents, "[i]nfringement lies . . . only if an equivalent or a literal correspondence of every limitation of the claim is found in the accused device." *Id.* For an element to be equivalent, "the differences between the element and the claim limitation [must be] 'insubstantial,'" which is determined by asking whether "the element performs substantially the same function in substantially the same way to obtain substantially the same result as the claim limitation." *Id.* at 1316-17.

### I. Literal Infringement

Microfil argues that its systems do not literally infringe the '927 Patent or the '671 Patent because "the Microfil systems simply do not use a single controller . . .

." (M. Mot. 10). In our claim construction for the term "controller", we ruled that "[i]n the written specification [for the AutoMed patents], the patentee clearly states that a control system regulates all aspects of the automated pill dispensing device [because, for] example, the written specification states that 'the control system places a refill request with the vibratory dispenser,' that the 'control system assigns at least one accumulation receptacle,' and that the control system controls the various processes employed by the system." *AutoMed Technologies, Inc. v. Microfil, LLC*, 2005 WL 2861043, *7-8 (N.D. Ill. 2005). Accordingly, we ruled that "while the patentee did not modify the term controller with the word single, the specification indicates that a single control system regulates the entire process." *Id.*

In its Local Rule 56.1 statement of facts, Microfil states that "[t]he Microfil systems use multiple controllers to regulate the pill dispensing process." (M. SF Par. 34). Microfil also states that "[a] separate controller is used to regulate each separate module of the Microfil system, and thus the systems use six controllers." (M. SF Par. 34). AutoMed, on the other hand, argues that "[a]pplying the court's, as opposed to Microfil's, construction – a single system that regulates the entire pill-dispensing process – the Microfil Systems include the controller of the AutoMed patents." (A. Resp. 5). Specifically, AutoMed claims that during Gerold's deposition, Gerold testified that the Microfil Systems are "controlled by a single control program [that] sequences the controls of the various modules." (A. Resp. 5).

AutoMed's argument in regard to the meaning of the term the controller is

7

contrary to this court's claim construction. In regard to the construction of the term "controller," we pointed out in our prior ruling that "[i]n the written specification [for the AutoMed patents], the patentee clearly states that *a* control system regulates *all* aspects of the automated pill dispensing device." *AutoMed Technologies, Inc.*, 2005 WL 2861043, at *7(emphasis added). Therefore, we determined that "the specification indicates that a *single* control system regulates the entire process." *Id.* (emphasis added). While the Microfil systems have a "master control program" that links the different control systems, AutoMed has not disputed the fact that the Microfil systems each have six controllers in addition to the master control program, all of which are designed to work independently of each other and of the master control program. (Gerold's Dep. 77-80); (Bergeron's Dep. 85-102). Finding that multiple controllers constitute one single controller system just because they are in some way coordinated by a master computer would render our earlier construction of the term controller meaningless by allowing any number of controllers to collectively constitute "one single controller system." Accordingly, no reasonable trier of fact could find other than that the Microfil Systems do not have a single controller system as we construed the term and, thus, the Microfil Systems do not literally infringe the '927 Patent and the '671 Patent.

II. Doctrine of Equivalents

The Federal Circuit has stated that "[u]nder the doctrine of equivalents, 'a

product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention.'" *Freedman Seating Co. v. American Seating Co.*, 420 F.3d 1350, 1357 (Fed. Cir. ,2005)(quoting *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21 (1997)). The patentee, or in this case assignee, seeking to show infringement under the doctrine of equivalents must "provide *particularized testimony* and linking argument as to the 'insubstantiality of the differences' between the claimed invention and the accused device or process . . . ." *Network Commerce, Inc. v. Microsoft Corp.*, 422 F.3d 1353, 1362-63 (Fed. Cir. 2005)(quoting *Texas Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1567 (Fed. Cir. 1996))(emphasis added). This means that "[g]eneralized testimony as to the overall similarity between the claims and the accused infringer's product or process will not suffice." *Id.; see also Lear Siegler, Inc. v. Sealy Mattress Co. of Michigan, Inc.*, 873 F.2d 1422, 1425 (Fed. Cir. 1989)(stating that "[t]he evidence and argument on the doctrine of equivalents cannot merely be subsumed in plaintiff's case of literal infringement"). In the instant action, AutoMed has not argued that it should succeed in its motion for summary judgment under the doctrine of equivalents. (A. Mot. 6)(arguing only that "[e]ach of the accused products . . . literally infringe multiple claims of the AutoMed Patents). AutoMed also only argues for a finding of literal infringement in its response to Microfil's motion for summary judgment. (A. Resp.

9

3). Accordingly, because AutoMed has not established literal infringement or argued for infringement under the doctrine of equivalents, we grant Microfil's instant motion for summary judgment.

## CONCLUSION

Based on the foregoing analysis, we grant Microfil's motion for summary judgment on the issue of infringement in its entirety and deny AutoMed's motion for summary judgment in its entirety.

Samuel Der-Yeghiayah
United States District Court Judge

Dated: January 18, 2006