# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| AUTOMED TECHNOLOGIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04 C 5596 |
| | ) | |
| MICROFIL, LLC and WILLIAM GEROLD, an individual, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Plaintiff AutoMed Technologies, Inc.'s ("AutoMed") and Defendant William Gerold's ("Gerold") motions for summary judgment on the issue of damages and injunctive relief. For the reasons stated below, we grant in part and deny in part AutoMed's motion for an injunction and grant in part and deny in part AutoMed's request for damages. We also grant in part and deny in part Gerold's motion for summary judgment on the issue of an injunction and grant Gerold's motion for summary judgment on the issue of damages.

1

## BACKGROUND

AutoMed is the assignee of U.S. Patent No. 6,449,927 ("'927 Patent") and U.S. Patent No. 6,742,671 ("'671 Patent"). Both the '927 Patent and the '671 Patent cover a system and methods for automatically dispensing prescriptions. The inventions claimed and described in the AutoMed patents are embodied in AutoMed's QuickScript System. On April 20, 1998, Gerold entered into a written and oral agreement with Baxter Healthcare Corporation ("Baxter") to become the project manager of Baxter's QuickScript project that included a Non-employee Security Agreement ("Agreement"). On March 31, 1999, when AutoMed purchased the division of Baxter with which Gerold was associated, AutoMed became the assignee of the Agreement and the QuickScript project.

In 2002, after Gerold ended his consulting work for Baxter and AutoMed, Gerold founded Vanguard Medical Systems, which is now Defendant Microfil, LLC ("Microfil"). Gerold then began the development of an automated pill dispensing system of his own. AutoMed brought the instant patent infringement suit against Microfil, alleging that Microfil's 219, 107, and Auger Systems (collectively referred to as "the Microfil Systems") infringe AutoMed's '927 Patent and '671 Patent. AutoMed further alleged that Gerold breached the Agreement by using confidential information gained during his employment for Baxter and AutoMed in the design of the Microfil Systems. On October 26, 2005, we ruled on the parties' cross motions for summary judgment, granting AutoMed's motion for summary judgment on the

breach of contract claim. *AutoMed Technologies, Inc. v. Microfil, LLC*, 2005 WL 2861043, at *1 (N.D. Ill. 2005). On January 18, 2006, we granted Microfil's motion for summary judgment on AutoMed's patent infringement claim.

## DISCUSSION

I. AutoMed's Request for a Permanent Injunction

     AutoMed seeks an injunction permanently barring Gerold from disclosing AutoMed's confidential information and barring Gerold from using AutoMed's confidential information to develop or manufacture any pharmaceutical automation systems for two years. (A Mot. 5). In determining whether a permanent injunction is proper, a court must first consider whether the plaintiff has actually succeeded on the merits of his claim. *Plummer v. American Institute of Certified Public Accountants,* 97 F.3d 220, 229 (7th Cir. 1996). The court also must consider: (A) "whether the plaintiff will have an adequate remedy at law or will be irreparably harmed if the injunction does not issue;" (B) "whether the threatened injury to the plaintiff outweighs the threatened harm the injunction may inflict on the defendant;" and © "whether the granting of the injunction will harm the public interest." *Id*. In the instant action, we have already determined that Gerold breached his contract with AutoMed, and therefore AutoMed has succeeded on the merits of its breach of contract claim. Accordingly, we will consider the remaining three factors to determine whether the entry of a permanent injunction is proper.

### A. Adequate Remedy at Law or Irreparable Harm Factor

AutoMed argues that "[i]t is well established that the use and disclosure of another's confidential information causes irreparable harm." (A Mot. 6). However, the Seventh Circuit has stated in relation to breach of contract cases, such as the instant action, that "damages are the norm in breach of contract as in other cases [and that because] damages are the norm, . . . the plaintiff must show why his case is abnormal." *Walgreen Co. v. Sara Creek Prop. Co., B.V.*, 966 F.2d 273, 274-75 (7th Cir. 1992). In order to meet this burden, a plaintiff "must show that damages are inadequate, not that the denial of the injunction will work irreparable harm." *Id.*

In the instant action, we found in an earlier opinion that Gerold breached his contract with AutoMed. (10/26/05 Op.) As is stated above, the typical remedy for a breach of contract is monetary damages. *Walgreen Co.*, 966 F.2d at 274-75. However, "[w]hen a breach of contract is proved but damages cannot be estimated with reasonable certainty, the plaintiff is entitled to an injunction." *Cook Inc. v. Boston Scientific Corp.*, 333 F.3d 737, 744 (7th Cir. 2003)(holding that because neither the plaintiff's product or the defendant's product had made it to the marketplace, "translat[ing] [the effect of defendant's breach of contract] into a dollar amount of lost expected profits to [the plaintiff] is impossible").

In the instant action, AutoMed has two problems in demonstrating that it suffered any damages because of the breach of contract by Gerold. First, while

Gerold referenced at least some of AutoMed's confidential information before designing the Microfil Systems, and thus breached his Agreement with AutoMed, it is not clear to what degree or to what extent Gerold used AutoMed's information. AutoMed has not provided to the court sufficient information regarding what portion of the Microfil Systems, if any, are based on Gerold's breach of contract. Second, because the Microfil Systems are yet to reach the market, AutoMed has failed to show how Gerold's breach of the contract will actually affect any of AutoMed's sales. At this point in time, AutoMed's only injury is the loss of its exclusive use over its confidential information, and AutoMed admits that it has not lost any sales or its ability to market its own QuickScript system as a result of Gerold's acts. (Resp. G SF Par. 2-3). AutoMed has not shown that Gerold's breach of the contract resulted in any damages to AutoMed. This is not a case where a plaintiff has established damages but such damages cannot be calculated with a reasonable certainty, thus entitling the plaintiff to an injunction. In this case, AutoMed has not even made a *prima facie* case that there are any damages or irreparable harm. Therefore, AutoMed's rights can be vindicated through the entry of a judgment in its favor and the entry of a nominal damages award.

### B. Balance of the Harms Factor

In ruling on a request for a permanent injunction, the court must determine "whether the threatened injury to the plaintiff outweighs the threatened harm the

injunction may inflict on the defendant." *Plummer,* 97 F.3d at 229. In the instant action, AutoMed's request for a permanent injunction has two components. First, AutoMed is seeking to bar Gerold from ever disclosing AutoMed's confidential information. In light of the fact that Gerold has already signed a contract that requires him to not disclose confidential information, such an injunction would not create any additional hardship for Gerold.

Second, AutoMed is seeking to bar Gerold from developing or manufacturing any pharmaceutical automation systems for two years from the date of the permanent injunction, if one is entered. Gerold argues that Microfil has already voluntarily taken the Microfil Systems off the market during the pendency of this litigation, and that an injunction would not be appropriate. AutoMed admits in its statement of facts that "[i]n March 1998, William Gerold . . . submitted a proposal to Baxter for the initial fabrication of the QuickScript system" and that "[i]n April 1998, Gerold was retained by Baxter as a consultant to assist in fabricating the QuickScript system . . . ." (A SF Par. 9). It is clear from these admissions that Gerold knew enough about pharmaceutical automation systems to submit a proposal to AutoMed and for AutoMed to hire Gerold and his company to work on the QuickScript system. AutoMed has not shown a sufficient nexus between Gerold's breach of contract and Gerold's ability to develop or manufacture pharmaceutical automation systems. AutoMed, therefore, has not shown that any development or manufacture by Gerold of pharmaceutical automation systems during the requested injunction period would

cause injury to AutoMed. On the other hand, barring Gerold from developing or manufacturing products that he may develop with his own expertise would affect Gerold adversely and create a great hardship for him. Therefore, we find that AutoMed has failed to show that the threatened injury, if any, to AutoMed outweighs the threatened harm to Gerold if a permanent injunction is entered barring Gerold from developing or manufacturing any pharmaceutical automation systems for the period requested by AutoMed.

C. Public Interest Factor

A court must also consider the public interest when deciding whether or not to enter a permanent injunction. *Plummer,* 97 F.3d at 229. There is a clear public interest in enforcing valid contracts and in protecting companies' confidential information. *See American Can Co. v. Mansukhani*, 742 F.2d 314, 329 (7th Cir. 1984)(stating that "[t]he primary purpose of trade secret law is to encourage innovation and development"). However, there is also a strong public interest in encouraging free enterprise and the creation of new and inventive products. Therefore, we find that the public interest is in favor of granting a permanent injunction barring Gerold from disclosing AutoMed's confidential information. We also find that the public interest is in favor of denying AutoMed's request for a permanent injunction barring Gerold from developing or manufacturing any pharmaceutical automation systems.

Based on the foregoing, we grant AutoMed's request for an injunction to permanently bar Gerold from disclosing AutoMed's confidential information. We also deny AutoMed's request for an injunction to bar Gerold from developing or manufacturing any pharmaceutical automation systems for two years.

II. Damages

AutoMed is also seeking $635,299.18 in monetary damages from Gerold. In general, "[a]'plaintiff has the burden of proving damages to a reasonable degree of certainty.'" *Haslund v. Simon Property Group, Inc.*, 378 F.3d 653, 658 (7th Cir. 2004)(quoting *Williams v. Board of Education*, 367 N.E.2d 549, 553 (1977)). In a breach of contract case such as the instant action, "[t]he point of an award of damages . . . is, so far as possible, to put the victim where he would have been had the breach . . . not taken place." *Chronister Oil Co. v. Unocal Refining and Marketing*, 34 F.3d 462, 464 (7th Cir. 1994). If a plaintiff in a breach of contract case is unable to show "a proper basis from which . . . damages could be computed, [the plaintiff] is entitled only to nominal damages." *Hentze v. Unverfehrt*, 604 N.E.2d 536, 540 (Ill. App. Ct. 1992); s*ee also Hydrite Chemical Co. v. Calumet Lubricants Co.*, 47 F.3d 887, 891 (7th Cir. 1995)(stating that "[p]roof of liability is complete when the breach of contract is shown [and that] at that point the plaintiff is entitled to nominal damages, even if he cannot show any injury from the breach).

In the instant action, AutoMed is requesting $635,299.18 in damages, which is

the amount that it paid to Gerold and his company during the development of the QuickScript system. AutoMed argues that this amount is appropriate in order to avoid Gerold's unjust enrichment. Gerold argues that AutoMed is only entitled to nominal damages. In order to recover damages based on unjust enrichment, a plaintiff must show that the "defendant (1) received] a benefit, (2) to the plaintiff's detriment, and (3) the defendant's retention of that benefit would be unjust." TRW *Title Ins. Co. v. Security Union Title Ins. Co.*, 153 F.3d 822, 828 (7th Cir. 1998)(citing *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (1989)). AutoMed has not shown that it suffered any actual harm from Gerold's breach of contract. It is undisputed that AutoMed has lost no sales as a result of Gerold's development of the Microfil Systems, and it is undisputed that Microfil has not sold any of its pill-dispensing products from the Microfil Systems. (Resp. G SAF Par. 2, 3). It is also undisputed that AutoMed is still able to effectively market the QuickScript system. (Resp. G SF Par. 33). In addition, it is undisputed that Gerold actually worked on the Quickscript system project and contributed ideas to the project. (Resp. G SF Par. 15). Based on the foregoing, and in light of the fact that Gerold actually contributed to the completion of the QuickScript system, it is not unjust for Gerold to retain the amount he and his company were paid for the work they performed. Therefore, we find that AutoMed has not shown that it is entitled to damages based on a theory of unjust enrichment.

AutoMed has also not established a causal connection between Gerold's

breach of contract and any harm to AutoMed. As stated above, AutoMed does not dispute that it has not lost sales as a result of Gerold's development of the Microfil Systems, or that it is still able to market the QuickScript system. (Resp. G SAF Par. 2, 3); (Resp. G SF Par. 33). In addition, the Agreement did not contain a non-compete clause and, in light of Gerold's background in automated systems and Gerold's contribution to the development of AutoMed's QuickScript system, a reasonable trier of fact cannot conclude other than that Gerold could have developed an automated pill dispensing system without relying on any of AutoMed's confidential information. Finally, we note that in arguing for a permanent injunction, AutoMed claims that it suffered "irreparable harm." (Rep. A Mot. 3, 4). However, AutoMed has not shown to any degree of certainty that it suffered a harm due to Gerold's breach of contract. Therefore, based on all the evidence, we conclude that the only appropriate award of damages to AutoMed would be an award of nominal damages, and we award AutoMed nominal damages in the amount of one dollar ($1.00).

## CONCLUSION

Based on the foregoing analysis, we grant in part and deny in part AutoMed's motion for an injunction and grant in part and deny in part the request for damages. We also grant in part and deny in part Gerold's motion for summary judgment on the issue of an injunction and grant Gerold's motion for summary judgment on the issue

of damages. Specifically, we grant AutoMed's request for an injunction to permanently bar Gerold from disclosing AutoMed's confidential information, and we deny AutoMed's request for an injunction to bar Gerold from developing or manufacturing any pharmaceutical automation systems for two years. We also award AutoMed nominal damages in the amount of one dollar ($1.00).

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated:   June 7, 2006